UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
DOROTHY NICKELSON,

|  |  |
|---|---|
| Plaintiff, | Civil Action No.: |
| -and- | **COMPLAINT** |
| OFI GLOBAL ASSET MANAGEMENT, INC., ANNIE KANG, in her individual and official capacity, JOHN DOES 1-5, and ABC Corporations 1-5, | **JURY TRIAL DEMANDED** |
| Defendants. | |

-------------------------------------------------------------------x

DOROTHY NICKELSON (hereinafter "Plaintiff"), by her attorneys, Certilman Balin Adler & Hyman, LLP, allege the following upon information and belief against OFI GLOBAL ASSET MANAGEMENT, INC. (hereinafter "OFI"), ANNIE KANG, in her individual and official capacity (hereinafter "Kang") (collectively, "Defendants"), JOHN DOES 1-5, and ABC Corporations 1-5.

### NATURE OF ACTION

1.      This is an action, *inter alia*, brought to address discrimination in employment on the basis of age in violation of the New York State Human Rights Law (New York Executive Law) (hereinafter "NYSHRL") § 290 *et seq.*; and the New York City Human Rights Law (New York City Administrative Code) (hereinafter "NYCHRL") § 8-101, *et seq.*

2.      The action seeks compensatory and punitive damages to secure future protection and to redress the past deprivation of rights secured to Plaintiff under these state and local laws.

3.      Plaintiff alleges that Defendants terminated her employment with Defendant OFI as a result of her status in a statutorily-protected class of employees, namely over the age of 40.

4.      The actions complained of herein violate the enumerated statutory provisions because Plaintiff was, at the time of her termination, an employee who was significantly older

than her colleagues and direct supervisor and whose duties were transferred to significantly younger employees of Defendant OFI.

5. Plaintiff seeks: (a) compensation and other relief to make her whole resulting from her improper termination; and (b) all other, further relief that the Court deems just and proper.

## JURISDICTION AND VENUE

6. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332 for claims arising under the NYSHRL and the NYCHRL due to the diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. The venue of this Court is appropriate pursuant to 28 U.S.C. § 1391, as the underlying acts, omissions, and events giving rise to the instant matter occurred within this District.

## PARTIES

8. Plaintiff is, at the time of this writing, 68 years of age, and is a resident of Flourtown, Pennsylvania.

9. From April 25, 2016 to February 12, 2018, Plaintiff was employed as a Senior Investment Writer for Defendant OFI.

10. Defendant OFI is a corporation organized and/or incorporated and/or authorized to do business under the laws of the State of New York; its principal place of business is located at 225 Liberty Street, New York, New York 10281; and it is engaged in the business of, *inter alia*, investment consulting services.

11. Defendant Kang is, at the time of this writing, a Vice-President of Defendant OFI and who is approximately 45 years of age.

2

6847980.1

12.     Upon information and belief, at all relevant times to the instant matter, Defendants, individually and/or collectively, constitute an employer as defined by the NYSHRL § 290, *et seq.*, and the NYCHRL § 8-101, *et seq.*

13.     John Does 1 through 5 are fictitious names of individuals whose identities are unknown at this time, who engaged in, participated in, and/or acted as supervisors and/or employers associated with the violations complained of herein.

14.     ABC Corporations 1 through 5 are fictitious names of business entities that have operated as additional employers, are subsidiaries of Defendant OFI, and/or are parent organizations of Defendant OFI who are otherwise involved in the violations complained of herein.

## ALLEGATIONS OF FACT

15.     Prior to Plaintiff's employment with Defendant OFI, she worked in the title of Editor-in-Chief, Investment Writer for TIAA-CREF from 2008 to 2016.

16.     In or about 2016, Plaintiff was contacted by a recruitment search agency, on behalf of Defendant OFI, to gauge Plaintiff's interest to leave her then-existing employment and join OFI is a similar capacity.

17.     Specifically, according to Plaintiff, she was advised that Defendant OFI wanted to expand its long-term business model of securing clients from the private/retail arena to a business model that focused more on securing clients from large global institutions and municipalities.

18.     Given Plaintiff's specific set of skills and expertise, as well as a wealth of experience in drafting and revising institutional investment collateral, which included Requests for Proposals (hereinafter "RFPs") to secure such institutional business, Defendant OFI deemed Plaintiff a perfect candidate to aid Defendant OFI in this shift in its business model.

6847980.1

19.     As a result of this recruitment process, Plaintiff interviewed with nine individuals from Defendant OFI, including two representatives from Defendant OFI's Human Resources Department, Peggy Weaver (hereinafter "Weaver") and Josh Morales.

20.     The above-stated interviews occurred over three days in late February and early March.

21.     On or about April 11, 2016, Plaintiff was contacted by Defendant OFI offering her the position of Senior Investment Writer.

22.     After some negotiations regarding her total compensation package she would receive from Defendant OFI, Plaintiff agreed to join Defendant OFI and she gave notice to her previous employer.

23.     On April 25, 2016, Plaintiff joined Defendant OFI and began working under the direct supervision of Jennifer Sexton Foxson (hereinafter "Foxson"), who was a Senior Vice-President at that time.

24.     Plaintiff's annual compensation included a base salary of $122,000, a bonus of $25,000, and a profit sharing percentage that equaled approximately $12,000; and the profit sharing percentage would be paid out each consecutive year going forward, based on Defendant OFI's performance.

25.     During Plaintiff's tenure with Defendant OFI as a Senior Investment Writer, she was primarily responsible for redrafting, editing, and reworking the language in the RFPs to institutional clients.

26.     Additionally, Plaintiff rewrote the language for the consultants' databases, was primarily responsible for updating and maintaining the Qvidian database, and was charged with ensuring the overall accuracy of the content used in the RFPs in Product Narratives and in Sample RFPs.

6847980.1

27.     Further, Plaintiff acted in a pseudo-managerial capacity over a team[1] of approximately six employees, wherein she worked with junior writers, ran team meetings, and provided feedback to her subordinates.[2]

28.     Also, Plaintiff frequently communicated and worked in conjunction with the client distribution team, the sales team, the client portfolio managers, and the product Vice-Presidents, in order to, amongst other things, grow the institutional client side of Defendant OFI's business.

29.     Almost immediately after Plaintiff's hire, she was assigned to one of Defendant OFI's high-profile projects known as the Pre-Sophisticated Client Project.

30.     As part of the above-stated project, Plaintiff served as the content expert as bi-weekly meetings offering language changes and suggestions to the sales team and product managers of their respective product's "pitch book"; based upon Plaintiff's comments and the recommendations from key stakeholders of Defendant OFI, she rewrote the language in the Sample RFPs and Qvidian database; and oversaw the project to its ultimate conclusion, which was a resounding success in the eyes of Defendant OFI.

31.     In or about September 2016, Foxson was promoted to a different position within Defendant OFI and she ceased being Plaintiff's supervisor at that time.

32.     Foxson was replaced with Defendant Kang, who, at the time of this writing, is approximately 45 years of age.

33.     Defendant Kang had been hired by Defendant OFI in August 2016 to replace another, former supervisor of the team, Ellen Gutierrez, who along with Foxson hired Plaintiff back in April 2016.

---

[1]     With respect to the demographics of Plaintiff's team, she was the only person over the age of 60 on said team, while most of the members of the team were either in their 30s or 20s.

[2]     Admittedly, Plaintiff never worked in a traditional management capacity; as such, she never had the authority to hire/fire people, to discipline employees, or to issue performance evaluations.

6847980.1

34.     From the outset, Defendant Kang targeted Plaintiff because, in part, Defendant Kang immediately gravitated toward the younger employees, thereby leaving Plaintiff ostracized.

35.     As an example, when Defendant Kang worked from home, Defendant Kang quite often texted with the younger employees on the team but not with Plaintiff; said texts occasionally shared links to various media websites, including but not limited to podcasts.

36.     As a result thereof, as well as the other incidents and events contained herein, Plaintiff felt isolated and ostracized by Defendant Kang due to Plaintiff's age.

37.     Further, Plaintiff witnessed at least three younger employees of Defendant OFI within her team get promoted by Defendant Kang to positions that were of equal stature on Defendant OFI's organizational chart as Plaintiff.

38.     Despite a declaration from the Chief Executive Office of Defendant OFI, Art Steinmetz, calling for all employees to speak up at meetings with suggestions, Defendant Kang expressly indicated that she did not like people who spoke up during said meetings.          '

39.     As a result thereof, Defendant Kang promoted younger employees who remained silent during said meetings.

40.     However, Plaintiff received no such accolades, whether in title or nomenclature, from Defendant Kang, even though Plaintiff possessed and displayed skills well beyond the acuity and expertise of her recently-promoted colleagues, and frequently attempted to actively participate in meetings with Defendant Kang.

41.     In contrast, whenever Plaintiff spoke up during said meetings, her comments were generally not welcome, even though the attendees at said meetings found Plaintiff's comments to be productive and insightful.

6847980.1

42.     Defendant Kang approved four younger members of the team to respectively get their Certified Financial Analyst certification (hereinafter "CFA"), which carried an approximate cost of several thousand dollars per employee.

43.     However, when Plaintiff applied to receive training related to Project Management, which was a skill Defendant Kang indicated to Plaintiff that she lacked, Defendant Kang denied said request indicating that there was not enough money in the budget for said training.[3]

44.     In addition, during Plaintiff's tenure with Defendant OFI under Defendant Kang, Plaintiff was not provided the assistance that she needed on certain projects.

45.     Specifically, during this time frame, Defendant OFI hired a data manager for the team, and he had a large project assigned to him.

46.     This individual, who was approximately 25 to 30 years younger than Plaintiff, requested from Defendant Kang two new employees to assist in said project.

47.     Defendant Kang immediately complied with said request and fast-tracked the hiring process by lobbying for approval.

48.     Upon information and belief, one, new position was approved and a full-time employee was subsequently hired by Defendant OFI; moreover, shortly after Plaintiff's termination, a second, new position was approved and another full-time employee was subsequently hired by Defendant OFI.[4]

49.     Meanwhile, Plaintiff, who, at that time, was rewriting all of the existing business development content while working on heavy quarter-end work with the Sample RFPs Narratives, and Due Diligence Questionnaires, placed similar requests for freelance assistances

---

[3]     The approximate cost of said training sought by Plaintiff was $300.

[4]     Upon information and belief, the termination of Plaintiff provided Defendant Kang the necessary budgetary discretion to allow for the hiring of these two, new employees.

6847980.1

at least a dozen times, and Defendant Kang consistently refused to hire even a temporary freelance assistant and/or any new, full-time employees.

50.     During Plaintiff's tenure with Defendant OFI under the supervision of Defendant Kang, she would make comments that clients preferred to work with younger team members, than Plaintiff; moreover, Defendant Kang "played up" the younger employees, while relegating Plaintiff to a less prominent and visual role.

51.     Defendant Kang, also, indicated to Plaintiff that she moved too slowly and suffered from an inability to multi-task.

52.     Defendant Kang, while in the work place, also made comments to Plaintiff that she viewed the elderly as feeble, weak, and burdensome, and she decried the need to care for older family members by putting them in "homes."

53.     Defendant Kang was also critical of Plaintiff's job performance, as it related to Plaintiff's prioritization of ongoing projects.                                                              '

54.     Specifically, the team, excluding Plaintiff, was responsible for completing quarterly reports on RFPs, and said reports had time-sensitive, regulatory deadlines.

55.     However, since the other team members were already working 10-12 hour days at quarter-end and thereafter, Plaintiff routinely "jumped-in" and assisted the other team members in the completion of these reports by finishing the RFPs and Due Diligence Questionnaires.

56.     According to Plaintiff, she could "jump-in" to help out because some of her typical work duties were as not time-sensitive and team members had asked Plaintiff for assistance.

57.     And although Defendant Kang, on occasion would ask Plaintiff to aid in the completion of the quarterly RFP process, Defendant Kang would then later criticize Plaintiff for not prioritizing her own work over the work of the other team members.

6847980.1

58.     Furthermore, during Plaintiff's tenure with Defendant OFI, she underwent four, annual performance evaluations.

59.     According to Plaintiff, she received very good reviews in all of these evaluations, especially the ones done by Foxson before her promotion in October 2016.

60.     However, after that point in time, Defendant Kang performed said evaluation and, despite giving Plaintiff high marks, Defendant Kang would still raise the above-stated issue (e.g. prioritization issue and project management inexperience), as a way to further perpetuate Defendant Kang's anti-age bias against Plaintiff.

61.     In response to Defendant Kang's comments, Plaintiff asked for assistance with prioritization, which Defendant Kang denied.

62.     Further, in the best interest of Defendant OFI, Plaintiff would ask Defendant Kang to review her work, but Plaintiff was routinely advised by Defendant Kang that she did not have time to do so.[5]

63.     Overall, Plaintiff objectively observed that Defendant OFI and Defendant Kang crated an environment that was hostile to older employees but that was favorable to employees in their 20s and 30s.

64.     In addition, from May 2017 to December 2017, Defendant OFI decided to audit Plaintiff's team.

65.     Plaintiff was specifically assigned to serve as the internal auditor's key contact and work with the auditor.

66.     Although this assignment was a massive undertaking, Plaintiff, along with assistance from the team excluding Defendant Kang, were able to timely complete this task.

---

[5]     Upon information and belief, Defendant Kang would provide critical feedback to the team's younger employees.

6847980.1

67.    During said process, the lead auditor from Defendant OFI would bypass Defendant Kang, and dealt directly with Plaintiff.

68.    At the conclusion of this audit, Plaintiff and the team received the highest possible rating for passing the audit.

69.    In fact, during the divisional year-end meeting, the Qvidian audit was mentioned by Defendant OFI as one of the top ten accomplishments of the entire division within Defendant OFI for 2017.

70.    Then, on February 12, 2018, Plaintiff arrived at work for an "update meeting."

71.    Plaintiff was confronted by Defendant Kang, who said: "let's go to the conference room."

72.    Upon arriving at the conference room, an employee of Defendant OFI from its Human Resources Department, later identified as Weaver, was already in said room.

73.    According to Plaintiff, Defendant Kang then stated that Plaintiff's position of Senior Investment Writer was being eliminated; and Defendant Kang then abruptly exited said room.

74.    Weaver was then left to conduct the rest of this meeting by herself.

75.    After which, Weaver stated to Plaintiff that she was actually being terminated because of poor job performance.

76.    When Plaintiff asked questions about her health insurance, a severance package, and a possible short-term disability claim, Weaver was not forthcoming with honest and/or accurate responses.

77.    The only two things that Weaver was certain about were that Plaintiff's last day of employment with Defendant OFI would be February 12, 2018 and that Plaintiff would be ineligible for any short-term disability benefits.

6847980.1

78.     Plaintiff's termination meeting lasted approximately 20 minutes, during which she was given a summary of benefits and a list of phone numbers to call, but never given paperwork explaining the steps she needed to apply for coverage under the Consolidated Omnibus Budget Reconciliation Act of 1985 (hereinafter "COBRA"), a separation from service guide, or any indication on when she would receive her final paycheck.

79.     Further, Plaintiff was directed to remain in the conference room following said meeting.

80.     Subsequently thereto, Plaintiff was asked to leave the building and other employees of Defendant OFI packed up Plaintiff's personal belongings.

81.     Since Plaintiff's termination, Defendant OFI hired two, new employees to work under Defendant Kang's supervision; one to perform some of the tasks, duties, and responsibilities that Plaintiff had previously performed, and the other to assist the data manager.

82.     Additionally, the remainder of Plaintiff's job duties were assigned to three other members of the team, all of whom were in their 20s; moreover, the Employers hired a freelance writer to assist the team with the quarter-end work.

83.     To date, Plaintiff is still engaged in the process of securing comparable, full-time employment; and in the interim is currently employed on an as needed basis performing tasks related to institutional and intermediary writing, along with the drafting, editing, and reworking of RFPs focused in on institutional and municipal investments.

## FIRST CAUSE OF ACTION
## DISCRIMINATION UNDER THE NYSHRL
## AGAINST DEFENDANT OFI

84.     Plaintiff repeats and realleges Paragraphs 1 through 83 of the Complaint as if fully set forth herein.

85.     Pursuant to NYSHRL § 290:

6847980.1

The legislature hereby finds and declares that the state has the responsibility to act to assure that every individual within this state is afforded an equal opportunity to enjoy a full and productive life and that the failure to provide such equal opportunity, whether because of discrimination, prejudice, intolerance or inadequate education, training, housing or health care not only threatens the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state and threatens the peace, order, health, safety and general welfare of the state and its inhabitants. A division in the executive department is hereby created to encourage programs designed to insure that every individual shall have an equal opportunity to participate fully in the economic, cultural and intellectual life of the state; to encourage and promote the development and execution by all persons within the state of such state programs; to eliminate and prevent discrimination in employment, in places of public accommodation, resort or amusement, in educational institutions, in public services, in housing accommodations, in commercial space and in credit transactions and to take other actions against discrimination as herein provided; and the division established hereunder is hereby given general jurisdiction and power for such purposes.

86.    Pursuant to NYSHRL § 296:

For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

87.    Causes of actions alleging violations of the NYSHRL are treated in a similar manner to causes of action alleging violations of the Age Discrimination in Employment Act of 1967 (hereinafter "ADEA").  *See Ferrante v. American Lung Assn.*, 90 N.Y.2d 623 (1997).

88.    Pursuant to NYSHRL § 296, a *prima facie* case is alleged if: i) an individual demonstrates that he/she is a member of a protected class; ii) an individual demonstrates that his/her employer knew or had reason to know that said individual is a member of a protected class; iii) an individual was caused to suffer from an adverse employment action effectuated by his/her employer; and iv) his/her employer effectuated said adverse employment action as a

6847980.1

result of an individual's membership in a protected class.   *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

89.     In the instant matter, it is without question that Defendant OFI violated the § 296 of the NYSHRL.

90.     Plaintiff, at the time of her termination, was 67 years of age meaning that she was/is in a protected class of employees, as per the NYSHRL.

91.     At the time of Plaintiff's termination, Defendant OFI knew that Plaintiff was 67 years of age.

92.     On February 12, 2018, Plaintiff was subjected to an adverse employment action, when she was terminated from her position of Senior Investment Writer by Defendant OFI.

93.     Plaintiff was and still is capable of performing the tasks to which she had been previously assigned.

94.     Plaintiff had previously performed all of the tasks required of an employee in said position without incident.

95.     Plaintiff received consistently favorable ratings on her performance evaluations, and her overall job performance was viewed in an excellent light

96.     Defendant OFI did not eliminate the duties and responsibilities of Senior Investment Writer.

97.     Defendant OFI hired a younger employee to perform some of the tasks that Plaintiff had previously been assigned, while the remainder of Plaintiff's duties were divided among three other employees in her team; all of whom are in their 20s.

98.     Furthermore, Defendant OFI, through its agent Defendant Kang, targeted Plaintiff and placed Plaintiff in a less favorable position than her younger counter parts.

6847980.1

99.     Plaintiff was denied an opportunity to receive training from Defendant OFI, even though Defendant OFI approved training for younger employees.

100.     Defendant OFI also refused to accurately acknowledge the contributions that Plaintiff made to the team's overall performance, and instead derided Plaintiff for fictional maladies and problems created by Defendant OFI's own mismanagement.

101.     Furthermore, Defendant OFI, through its agent, Defendant Kang, outwardly expressed disdain for individuals who had reached a certain age, by making comments about Plaintiff that were derogatory.

102.     Defendant OFI also refused to provide the necessary man power to Plaintiff when requested, but took no issue to provide the same when a younger employee made a similar request.

103.     There was no reduction in force by Defendant OFI.

104.     Moreover, Plaintiff is capable of working and is currently searching for alternative, comparable employment.

105.     Based upon the foregoing, and given the fact that Plaintiff has satisfied its "minimal burden," *Vuona v. Merrill Lynch & Co., Inc.*, 919 F.Supp.2d 359 (S.D.N.Y. 2013), Plaintiff has sufficiently alleged that she was subjected to a discriminatory employment practice, namely her termination, and said termination was caused by and/or resulted from Plaintiff's age.

106.     Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

6847980.1

## SECOND CAUSE OF ACTION
## HARASSMENT UNDER THE NYSHRL
## AGAINST DEFENDANT OFI

107.    Plaintiff repeats and realleges Paragraphs 1 through 106 of the Complaint as if fully set forth herein.

108.    In order to establish a *prima facie* claim for harassment under the NYSHRL, "a plaintiff must allege facts demonstrating that the alleged harassment created an objectively and subjectively hostile work environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 20 (1993).

109.    The term "hostile work environment" exists "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Hudson v. Loretex Corp.*, 1997 WL 159282, *3 (N.D.N.Y. 1997).

110.    The ultimate determination concerning whether a hostile work environment exists is "based upon the totality of circumstances, and generally cannot be based upon isolated incidents of harassment." *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 62-63 (2d Cir. 1992).

111.    Moreover, it must be noted that causes of actions alleging harassment under the NYSHRL are treated in a similar manner to causes of action alleging harassment under the ADEA. *See Ferrante v. American Lung Assn.*, 90 N.Y.2d 623 (1997).

112.    In the instant matter, it is without question that, in contravention of the NYSHRL, Plaintiff was caused to perform her duties as Senior Investment Writer with Defendant OFI in an objectively and subjectively hostile work environment.

113.    As referenced above, beginning in September 2016, Plaintiff was subjected to a series of managerial actions that were designed to interfere with Plaintiff's ability to perform her

6847980.1

duties and responsibilities, to undermine her authority, to cast Plaintiff as a subpar employee, and to jeopardize her employment with Defendant OFI.

114.    Furthermore, these actions perpetrated by Defendant OFI rendered Plaintiff's working conditions abusive and untenable.

115.    Specifically, Plaintiff was repeatedly placed in a less favorable position than her younger counter parts.

116.    Plaintiff was denied an opportunity to receive training, that would have been paid for by Defendant OFI, due to alleged internal budgetary reasons, while at the same time, Defendant OFI approved the expenditure of thousands of dollars for younger employees.

117.    Defendant OFI refused to accurately acknowledge the contributions that Plaintiff made to the team in ensuring their overall performance.

118.    Defendant OFI, through its agent Defendant Kang, outwardly expressed disdain for individuals who had reached a certain age, by making comments about Plaintiff that were derogatory.

119.    Defendant OFI, through its agent Defendant Kang, further refused to provide the necessary man power to Plaintiff when requested, but took no issue to provide the same when a younger employee made similar requests.

120.    Viewed in the totality of the circumstances, Defendant OFI's actions were designed to harass Plaintiff due to her age.

121.    Accordingly, Plaintiff has established that a hostile work environment existed at Defendant OFI.

122.    Therefore, the harassment to which Plaintiff was subjected was directly linked to Defendant OFI's knowledge of Plaintiff's age, and Plaintiff's termination from Defendant OFI was the culmination of Defendant OFI's harassing behavior targeting Plaintiff.

6847980.1

123.    Based upon the foregoing, and given the fact that Plaintiff has satisfied its "minimal burden," *Vuona v. Merrill Lynch & Co., Inc.*, 919 F.Supp.2d 359 (S.D.N.Y. 2013), Plaintiff has sufficiently alleged that she was subjected to harassment resulting from Plaintiff's age.

124.    Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

### THIRD CAUSE OF ACTION
### DISCRIMINATION UNDER THE NYCHRL
### AGAINST DEFENDANT OFI

125.    Plaintiff repeats and realleges Paragraphs 1 through 124 of the Complaint as if fully set forth herein.

126.    NYCRHL § 8-101, *et seq*. proscribes discrimination based on race, national origin, gender, disability, and/or age, *inter alia*, as it relates to employers and employees.

127.    NYCHRL § 8-107(1)(a) states, in pertinent part, that: "It shall be an unlawful discriminatory practice: [f]or an employer or an employee or agent thereof, because of the actual or perceived age . . . of any person, . . . to discharge from employment such person or to discriminate against such person."

128.    In order to establish a *prima facie* claim under this cause of action, it must be alleged that: i) an individual demonstrates that he/she is a member of a protected class; ii) an individual demonstrates that his/her employer knew or had reason to know that said individual is a member of a protected class; iii) an individual was caused to suffer from an adverse employment action effectuated by his/her employer; and iv) his/her employer effectuated said adverse employment action as a result of said individual's membership in a protected class.  *See Levin v. Yeshiva Univ.*, 96 N.Y.2d 484 (2001).

6847980.1

129.     Additionally, causes of actions alleging violations of the NYCHRL are "construed by courts more liberally than its state or federal counterparts." *Zakrzewska v. New School*, 14 N.Y.3d 469 (2010); *see also* NYCHRL § 8-130.

130.     In the instant matter, it is without question that Defendant OFI violated the § 8-107 of the NYCHRL.

131.     Plaintiff, at the time of her termination, was 67 years of age meaning that she was/is in a protected class of employees, as per the NYCHRL.

132.     At the time of Plaintiff's termination, Defendant OFI knew that Plaintiff was 67 years of age.

133.     On February 12, 2018, Plaintiff was subjected to an adverse employment action, when she was terminated from her position of Senior Investment Writer by Defendant OFI.

134.     Plaintiff was and still is capable of performing the tasks to which she had been previously assigned.

135.     Plaintiff had previously performed all of the tasks required of an employee in said position without incident.

136.     Plaintiff received consistently favorable ratings on her performance evaluations, and her overall job performance was viewed in an excellent light

137.     Defendant OFI did not eliminate the duties and responsibilities of Senior Investment Writer.

138.     Defendant OFI hired a younger employee to perform some of the tasks that Plaintiff had previously been assigned, while the remainder of Plaintiff's duties were divided among three other employees in her team; all of whom are in their 20s.

139.     Furthermore, Defendant OFI, through its agent Defendant Kang, targeted Plaintiff and placed Plaintiff in a less favorable position than her younger counter parts.

6847980.1

140.    Plaintiff was denied an opportunity to receive training from Defendant OFI, even though Defendant OFI approved training for younger employees.

141.    Defendant OFI also refused to accurately acknowledge the contributions that Plaintiff made to the team's overall performance, and instead derided Plaintiff for fictional maladies and problems created by Defendant OFI's own mismanagement.

142.    Furthermore, Defendant OFI, through its agent, Defendant Kang, outwardly expressed disdain for individuals who had reached a certain age, by making comments about Plaintiff that were derogatory.

143.    Defendant OFI also refused to provide the necessary man power to Plaintiff when requested, but took no issue to provide the same when a younger employee made a similar request.

144.    There was no reduction in force by Defendant OFI.

145.    Moreover, Plaintiff is capable of working and is currently searching for alternative, comparable employment

146.    Based upon the foregoing, and given the fact that Plaintiff has satisfied her initial burden, *see Stalker v. Stewart Tenants Corp.*, 2010 N.Y. Misc. LEXIS 6921, *7 (Sup. Ct. N.Y. Co. November 9, 2010), Plaintiff has sufficiently alleged that she was subjected to a discriminatory employment practice, namely her termination, and said termination was caused by and/or resulted from Plaintiff's age.

147.    Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

6847980.1

## FOURTH CAUSE OF ACTION
## HARASSMENT UNDER THE NYCHRL
## AGAINST DEFENDANT OFI

148.    Plaintiff repeats and realleges Paragraphs 1 through 147 of the Complaint as if fully set forth herein.

149.    NYCHRL § 8-107(1)(a) states, in pertinent part, that: "It shall be an unlawful discriminatory practice: for an employer . . ., because of the actual or perceived disability of any person, . . . to discharge from employment such person."

150.    Under the NYCHRL, "liability for a harassment/hostile work environment claim is proven where a plaintiff proves that he or she was treated less well than other employees because of the relevant characteristic." *Valcarcel v. First Quality Maintenance*, 41 Misc.3d 1222(A), *9 (Sup. Ct., Queens Co. 2013).

151.    Additionally, causes of actions alleging violations of the NYCHRL are "construed by courts more liberally than its state or federal counterparts." *Zakrzewska v. New School*, 14 N.Y.3d 469 (2010); *see also* NYCHRL § 8-130.

152.    In the instant matter, it is without question that, in contravention of the NYCHRL, Plaintiff was caused to perform her duties as Senior Investment Writer with Defendant OFI in an objectively and subjectively hostile work environment.

153.    As referenced above, beginning in September 2016, Plaintiff was subjected to a series of managerial actions that were designed to interfere with Plaintiff's ability to perform her duties and responsibilities, to undermine her authority, to cast Plaintiff as a subpar employee, and to jeopardize her employment with Defendant OFI.

154.    Furthermore, these actions perpetrated by Defendant OFI rendered Plaintiff's working conditions abusive and untenable.

6847980.1

155.    Specifically, Plaintiff was repeatedly placed in a less favorable position than her younger counter parts.

156.    Plaintiff was denied an opportunity to receive training, that would have been paid for by Defendant OFI, due to alleged internal budgetary reasons, while at the same time, Defendant OFI approved the expenditure of thousands of dollars for younger employees.

157.    Defendant OFI refused to accurately acknowledge the contributions that Plaintiff made to the team in ensuring their overall performance.

158.    Defendant OFI, through its agent Defendant Kang, outwardly expressed disdain for individuals who had reached a certain age, by making comments about Plaintiff that were derogatory.

159.    Defendant OFI, through its agent Defendant Kang, further refused to provide the necessary man power to Plaintiff when requested, but took no issue to provide the same when a younger employee made similar requests.

160.    Viewed in the totality of the circumstances, Defendant OFI's actions were designed to harass Plaintiff due to her age.

161.    Accordingly, Plaintiff has established that a hostile work environment existed at Defendant OFI.

162.    Therefore, the harassment to which Plaintiff was subjected was directly linked to Defendant OFI's knowledge of Plaintiff's age, and Plaintiff's termination from Defendant OFI was the culmination of Defendant OFI's harassing behavior targeting Plaintiff.

163.    Based upon the foregoing, and given the fact that Plaintiff has satisfied its initial burden, *see Stalker v. Stewart Tenants Corp.*, 2010 N.Y. Misc. LEXIS 6921, *7 (Sup. Ct. N.Y. Co. November 9, 2010), Plaintiff has sufficiently alleged that she was subjected to harassment resulting from Plaintiff's disability.

6847980.1

164.    Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

**FIFTH CAUSE OF ACTION**
**DISCRIMINATION UNDER THE NYSHRL**
**AGAINST DEFENDANT KANG**

165.    Plaintiff repeats and realleges Paragraphs 1 through 164 of the Complaint as if fully set forth herein.

166.    In order to avoid needless repetition, Plaintiff directs the Court to the legal basis for the claims contained in the instant cause of action, as stated above.  (*See* ¶¶ 85-88).

167.    However, it bears repeating that causes of actions alleging violations of the NYSHRL are treated in a similar manner to causes of action alleging violations of ADEA.  *See Ferrante v. American Lung Assn.*, 90 N.Y.2d 623 (1997).

168.    Further, it bears noting that an individual employee/agent of an employer falls within the definitional confines of "employer" under NYSHRL §§ 292, 296(1), and 296(6).

169.    In the instant matter, it is without question that Defendant Kang violated § 296 of the NYSHRL.

170.    Plaintiff, at the time of her termination, was 67 years of age meaning that she was/is in a protected class of employees, as per the NYSHRL.

171.    At the time of Plaintiff's termination, Defendant Kang knew that Plaintiff was 67 years of age.

172.    On February 12, 2018, Plaintiff was subjected to an adverse employment action, when she was terminated from her position of Senior Investment Writer as a result of the decision rendered by Defendant Kang.

6847980.1

173.   Plaintiff was and still is capable of performing the tasks to which she had been previously assigned.

174.   Plaintiff had previously performed all of the tasks required of an employee in said position without incident.

175.   Plaintiff received consistently favorable ratings on her performance evaluations, and her overall job performance was viewed in an excellent light.

176.   Defendant Kang caused Defendant OFI to hire a younger employee to perform some of the tasks that Plaintiff had previously been assigned.

177.   Defendant Kang further decided to assign the remainder of Plaintiff's duties among three other employees in her team; all of whom are in their 20s.

178.   Furthermore, Defendant Kang targeted Plaintiff and placed Plaintiff in a less favorable position than her younger counter parts.

179.   Plaintiff was denied an opportunity to receive training by Defendant Kang due to alleged budgetary reasons, even though Defendant Kang approved training for younger employees that cost significantly more than the training sought by Plaintiff.

180.   Defendant Kang also refused to accurately acknowledge the contributions that Plaintiff made to the team's overall performance, and instead derided Plaintiff for fictional maladies and problems created by Defendant Kang's own mismanagement.

181.   Furthermore, Defendant Kang outwardly expressed disdain for individuals who had reached a certain age, by making comments about Plaintiff that were derogatory.

182.   Defendant Kang also refused to provide the necessary man power to Plaintiff when requested, but took no issue to provide the same when a younger employee made a similar request.

6847980.1

183.    Moreover, Plaintiff is capable of working and is currently searching for alternative, comparable employment.

184.    Based upon the foregoing, and given the fact that Plaintiff has satisfied its "minimal burden," *Vuona v. Merrill Lynch & Co., Inc.*, 919 F.Supp.2d 359 (S.D.N.Y. 2013), Plaintiff has sufficiently alleged that she was subjected to a discriminatory employment practice, namely her termination, and said termination was caused by and/or resulted from Plaintiff's age.

185.    Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

### SIXTH CAUSE OF ACTION
### HARASSMENT UNDER THE NYSHRL
### AGAINST DEFENDANT KANG

186.    Plaintiff repeats and realleges Paragraphs 1 through 185 of the Complaint as if fully set forth herein.

187.    In order to avoid needless repetition, Plaintiff directs the Court to the legal basis for the claims contained in the instant cause of action, as stated above. (*See* ¶¶ 108-111).

188.    However, it bears repeating that causes of actions alleging violations of the NYSHRL are treated in a similar manner to causes of action alleging violations of ADEA. *See Ferrante v. American Lung Assn.*, 90 N.Y.2d 623 (1997).

189.    Further, it bears noting that an individual employee/agent of an employer falls within the definitional confines of "employer" under NYSHRL §§ 292, 296(1), and 296(6).

190.    In the instant matter, it is without question that, in contravention of the NYSHRL, Plaintiff was caused to perform her duties as Senior Investment Writer in an objectively and subjectively hostile work environment.

6847980.1

191. As referenced above, beginning in September 2016, which coincided with the assignment of Defendant Kang to act as Plaintiff's immediate supervisor, Plaintiff was subjected to a series of managerial actions that were designed to interfere with Plaintiff's ability to perform her duties and responsibilities, to undermine her authority, to cast Plaintiff as a subpar employee, and to jeopardize her employment.

192. Furthermore, these actions perpetrated by Defendant Kang rendered Plaintiff's working conditions abusive and untenable.

193. Specifically, Plaintiff was repeatedly placed in a less favorable position than her younger counter parts by Defendant Kang.

194. Defendant Kang denied Plaintiff an opportunity to receive training, that would have been paid for by Defendant OFI, due to alleged internal budgetary reasons, while at the same time, Defendant Kang approved the expenditure of thousands of dollars for younger employees.

195. Defendant Kang refused to accurately acknowledge the contributions that Plaintiff made to the team in ensuring their overall performance.

196. Defendant Kang outwardly expressed disdain for individuals who had reached a certain age, by making comments about Plaintiff that were derogatory.

197. Defendant Kang further refused to provide the necessary man power to Plaintiff when requested, but took no issue to provide the same when a younger employee made similar requests.

198. Viewed in the totality of the circumstances, Defendant Kang's actions were designed to harass Plaintiff due to her age.

199. Accordingly, Plaintiff has established that a hostile work environment existed, and said environment was due to the actions of Defendant Kang.

6847980.1

200.    Therefore, the harassment to which Plaintiff was subjected was directly linked to Defendant Kang's knowledge of Plaintiff's age, and Plaintiff's termination from Defendant OFI was the culmination of Defendants' harassing behavior targeting Plaintiff.

201.    Based upon the foregoing, and given the fact that Plaintiff has satisfied its "minimal burden," *Vuona v. Merrill Lynch & Co., Inc.*, 919 F.Supp.2d 359 (S.D.N.Y. 2013), Plaintiff has sufficiently alleged that she was subjected to harassment resulting from Plaintiff's age.

202.    Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

## SEVENTH CAUSE OF ACTION
## DISCRIMINATION UNDER THE NYCHRL
## AGAINST DEFENDANT KANG

203.    Plaintiff repeats and realleges Paragraphs 1 through 202 of the Complaint as if fully set forth herein.

204.    In order to avoid needless repetition, Plaintiff directs the Court to the legal basis for the claims contained in the instant cause of action, as stated above. (*See* ¶¶ 126-129).

205.    However, it bears repeating that causes of actions alleging violations of the NYCHRL are "construed by courts more liberally than its state or federal counterparts." *Zakrzewska v. New School*, 14 N.Y.3d 469 (2010); *see also* NYCHRL § 8-130.

206.    Further, it bears noting that an individual employee/agent of an employer falls within the definitional confines of "employer" under NYCHRL §§ 8-107(1), 8-107(6), and 8-107(13).

207.    In the instant matter, it is without question that Defendant Kang violated § 8-107 of the NYCHRL.

6847980.1

208.    Plaintiff, at the time of her termination, was 67 years of age meaning that she was/is in a protected class of employees, as per the NYCHRL.

209.    At the time of Plaintiff's termination, Defendant Kang knew that Plaintiff was 67 years of age.

210.    On February 12, 2018, Plaintiff was subjected to an adverse employment action, when she was terminated from her position of Senior Investment Writer as a result of the decision rendered by Defendant Kang.

211.    Plaintiff was and still is capable of performing the tasks to which she had been previously assigned.

212.    Plaintiff had previously performed all of the tasks required of an employee in said position without incident.

213.    Plaintiff received consistently favorable ratings on her performance evaluations, and her overall job performance was viewed in an excellent light.

214.    Defendant Kang caused Defendant OFI to hire a younger employee to perform some of the tasks that Plaintiff had previously been assigned.

215.    Defendant Kang further decided to assign the remainder of Plaintiff's duties among three other employees in her team; all of whom are in their 20s.

216.    Furthermore, Defendant Kang targeted Plaintiff and placed Plaintiff in a less favorable position than her younger counter parts.

217.    Plaintiff was denied an opportunity to receive training by Defendant Kang due to alleged budgetary reasons, even though Defendant Kang approved training for younger employees that cost significantly more than the training sought by Plaintiff.

6847980.1

218.    Defendant Kang also refused to accurately acknowledge the contributions that Plaintiff made to the team's overall performance, and instead derided Plaintiff for fictional maladies and problems created by Defendant Kang's own mismanagement.

219.    Furthermore, Defendant Kang outwardly expressed disdain for individuals who had reached a certain age, by making comments about Plaintiff that were derogatory.

220.    Defendant Kang also refused to provide the necessary man power to Plaintiff when requested, but took no issue to provide the same when a younger employee made a similar request.

221.    Moreover, Plaintiff is capable of working and is currently searching for alternative, comparable employment.

222.    Based upon the foregoing, and given the fact that Plaintiff has satisfied her initial burden, *see Stalker v. Stewart Tenants Corp.*, 2010 N.Y. Misc. LEXIS 6921, *7 (Sup. Ct. N.Y. Co. November 9, 2010), Plaintiff has sufficiently alleged that she was subjected to a discriminatory employment practice, namely her termination, and said termination was caused by and/or resulted from Plaintiff's age.

223.    Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

**EIGHTH CAUSE OF ACTION**
**HARASSMENT UNDER THE NYCHRL**
**AGAINST DEFENDANT KANG**

224.    Plaintiff repeats and realleges Paragraphs 1 through 223 of the Complaint as if fully set forth herein.

225.    In order to avoid needless repetition, Plaintiff directs the Court to the legal basis for the claims contained in the instant cause of action, as stated above. (*See* ¶¶ 149-151).

6847980.1

226.    However, it bears repeating that causes of actions alleging violations of the NYCHRL are "construed by courts more liberally than its state or federal counterparts." *Zakrzewska v. New School*, 14 N.Y.3d 469 (2010); *see also* NYCHRL § 8-130.

227.    Further, it bears noting that an individual employee/agent of an employer falls within the definitional confines of "employer" under NYCHRL §§ 8-107(1), 8-107(6), and 8-107(13).

228.    In the instant matter, it is without question that, in contravention of the NYSHRL, Plaintiff was caused to perform her duties as Senior Investment Writer in an objectively and subjectively hostile work environment.

229.    As referenced above, beginning in September 2016, which coincided with the assignment of Defendant Kang to act as Plaintiff's immediate supervisor, Plaintiff was subjected to a series of managerial actions that were designed to interfere with Plaintiff's ability to perform her duties and responsibilities, to undermine her authority, to cast Plaintiff as a subpar employee, and to jeopardize her employment.

230.    Furthermore, these actions perpetrated by Defendant Kang rendered Plaintiff's working conditions abusive and untenable.

231.    Specifically, Plaintiff was repeatedly placed in a less favorable position than her younger counter parts by Defendant Kang.

232.    Defendant Kang denied Plaintiff an opportunity to receive training, that would have been paid for by Defendant OFI, due to alleged internal budgetary reasons, while at the same time, Defendant Kang approved the expenditure of thousands of dollars for younger employees.

233.    Defendant Kang refused to accurately acknowledge the contributions that Plaintiff made to the team in ensuring their overall performance.

6847980.1

234.    Defendant Kang outwardly expressed disdain for individuals who had reached a certain age, by making comments about Plaintiff that were derogatory.

235.    Defendant Kang further refused to provide the necessary man power to Plaintiff when requested, but took no issue to provide the same when a younger employee made similar requests.

236.    Viewed in the totality of the circumstances, Defendant Kang's actions were designed to harass Plaintiff due to her age.

237.    Accordingly, Plaintiff has established that a hostile work environment existed, and said environment was due to the actions of Defendant Kang.

238.    Therefore, the harassment to which Plaintiff was subjected was directly linked to Defendant Kang's knowledge of Plaintiff's age, and Plaintiff's termination from Defendant OFI was the culmination of Defendants' harassing behavior targeting Plaintiff.

239.    Based upon the foregoing, and given the fact that Plaintiff has satisfied her initial burden, *see Stalker v. Stewart Tenants Corp.*, 2010 N.Y. Misc. LEXIS 6921, *7 (Sup. Ct. N.Y. Co. November 9, 2010), Plaintiff has sufficiently alleged that she was subjected to a discriminatory employment practice, namely her termination, and said termination was caused by and/or resulted from Plaintiff's age.

240.    Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

## <u>STATEMENT OF CLAIM FOR RELIEF</u>

By the actions and omissions described above, Defendants have violated the NYSHRL and the NYCHRL.

6847980.1

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court will:

- Find that Defendants, individually and collectively, violated the NYSHRL and the NYCHRL;

- Award compensatory damages to Plaintiff, including but not limited to back pay and other monetary benefits due and owed to her;

- Award compensatory damages to Plaintiff for the pain, suffering, emotional distress, loss of dignity, humiliation, and damages to reputation and livelihood endured by Plaintiff in the amount totaling $750,000.00;

- Award Plaintiff punitive damages in an amount to be determined at trial;

- Award Plaintiff all reasonable attorneys' fees and costs, including expert fees, of this action; and

- Grant Plaintiff such other and further relief as this Court deems appropriate and equitable, as may be required in the interest of justice.

Dated: East Meadow, New York
       May 1, 2019

CERTILMAN BALIN ADLER & HYMAN, LLP.

By: _____
        STEPHEN MC QUADE, ESQ.
        *Attorneys for Plaintiff*
        90 Merrick Avenue, 9th Floor
        East Meadow, New York 11554
        516-296-7172
        Fax: 516-296-7111
        smcquade@certilmanbalin.com

6847980.1